Good morning, and may it please the Court. A residential driveway immediately adjacent to and abutting the home is curtilage. It is both physically and psychologically connected to our common understanding of daily home activities, and it is analogous to the types of curtilage proximate to a home that the Supreme Court has been able to easily identify as such. In those cases that you rely on, was there any kind of offense or other barrier that demarcated the curtilage? No. In Hardiness, and I'm going to just say that I believe that's the right pronunciation, although I think the Chief Justice says Jardines, but I believe it is Hardiness. It was an open-aired front porch. In Collins, it was a short driveway. We know this because Justice Alito, in his dissent, described the motorcycle as only being a car length or two up the driveway, and that carport was open-aired. It was abutting the home, and there was a back wall and a side wall only as tall as about the height of a car, so it wasn't a full enclosure. In this case, there are several vehicles in the bottom, so where would you say the curtilage begins and ends, if at all? I mean, this car is closest to the street. I mean, it's the last of the car's part. The government argues it's near the street, so is there an end to the curtilage? It's not right up at the house, and there are cars that are further back on the other side of the fence, so probably clearly they would be curtilage. So, on these facts, is there a point at which the curtilage would end, or would you say all the way to the end of the street, unless it was in the street, it wouldn't be curtilage? Do you follow my question? I do, and I have two parts to my answer. The first part is, on the photograph, I think it's fair to say, at a minimum, it is from the sidewalk into the house, and, of course, Mr. Davlos is parked beyond the sidewalk into the private property. I think the lessons that we can take from the cases is that, at no time is the court, in the cases where the locations examined are approximately close to the home, the Supreme Court's not pulling out a measuring tape, and that's because it's rejected the case-by-case approach in favor of bright-line rules for which a presumption exists so that the Fourth Amendment doesn't come and go based on the exigencies of a particular moment. So, I think that what is essential for Mr. Davlos and properties like it is that the driveway is immediately adjacent to, and perhaps even abutting, the house. It's contained and very close. He's parked very close to his home, and that fits with not only how the Supreme Court has looked at the issue, but it's consistent with first principles and the Fourth Amendment's enumeration of the house and effects, and the presumption that our greatest privacy interests are in those places, and it's consistent with our historical understanding of curtilage, which Blackstone defined as all branches and appurtenances to the house, to the home. And I think that a residential driveway that is connected to and immediately adjacent to the home certainly falls within that definition of a branch or appurtenant to that property. Your short answer is, as long as it was in the driveway, it was in the curtilage. Thank you for rephrasing my answer. Yes. I understood what you said, but you're saying, if there had been 10 cars, as long as it was in the driveway, that subsumed within curtilage. Yes. And I think, at least for a presumption, I think in this case it's easier to see that that is the case, because it is a small property, so the car is very close to the home. But there was a picture of it, and so isn't this something for the district court to make a factual determination on? For the standard of review, the court can view the evidence in light of the video and photographic evidence, and certainly a fact where the car is parked can also be something that lends to a legal conclusion. So it's not merely a fact-finding per se. I think a car that is parked in this particular area lends to the legal conclusion, based on precedent, first principles, and history, as well as common sense, that it is within the curtilage of the home. It's not inconsistent with this court's own view, and I want to address Bean, because that is the one case that this court has a curtilage analysis. It was decided pre-Collins, and I think what is interesting is that the court looks at the curtilage question in the context of a dog sniff, but later in the opinion it identifies and acknowledges that typically this court requires exigent circumstances when a car is parked in a residential driveway before the interior of the car can be searched. So that lends itself, I think, to a presumption that it's better and more consistent with the Fourth Amendment to have that presumption of curtilage for a residential driveway, that there has to be some sort of warrant exception at play. Okay, well let's turn to that then. Why is the marijuana not something that can send to searching the car? Well, we have to back up from that. And first, it's important to know that the only articulated reason for the stop was a failure to change lanes, so that's a minor misdemeanor. I'm saying there was no marijuana once they found him. The intrusion occurred when Trooper Johnson physically intrudes onto the driveway to search the car. He did not identify marijuana from the street, nor does he— Was he smelling? No, he did not. He did not smell marijuana on Mr. Davalos. It was the point at which he entered the property and looked inside the car that he said he smelled marijuana. And I think that—so there's no plain view from the street that lends itself to the type of intrusion that he committed. And I think dovetailing with the Fourth Amendment curtilage question is the admonition by the Supreme Court in Lane v. California that when there's only probable cause of a minor misdemeanor, courts should rarely find exigent circumstances. And there's no articulable reason in this case that there was an identifiable officer safety concern. Not only had Mr. Davalos returned to his home property, his own behavior was peaceably compliant. There was no indication that anyone was ever with him. There was— The windows in the car are exceptionally dark. And in the video, he's approaching the vehicle, guns drawn or whatever, and he asks him, is there anybody else in there? Dark tinted windows, I mean, isn't that an indicator that an officer told he or she discerns that nobody else is in the vehicle? Isn't that what happened here? No. And first, if we're looking at exigent circumstances, we've got the presumption that this is going to be a home entry. So the question is, was there an emergency to authorize Trooper Johnson to intrude upon that protected area? There's radio chatter this whole time informing Trooper Johnson about Mr. Davalos' whereabouts. And at no time does he articulate any activity or behavior or evidence that would give rise beyond a general concern. And this Court has acknowledged that general safety concerns do not rise to the level of an exigent circumstance. Also, tinted windows alone are not evidence that give rise to reasonable suspicion of any type of activity. I didn't say it did. I was just meeting your point about officer safety. But I don't want to take you down the track. You're not going. There's no articulable reason other than tinted windows alone. Let me ask you another question. I read the transcript. Did he consent or not to the search? He did not consent. He didn't decline. He just didn't say anything, right? If we're talking about the point at which the government says he consents, Trooper Johnson says he wasn't asking for consent. He was telling him, I'm searching your car. But he didn't say, don't search. There doesn't have to be an affirmative stop right there from the defendant. Especially when... I'm not saying there has to be. I'm just trying to say what happened. I think he's in custody. He's being told they're going to search his car. I think it is a human response to acquiesce to authority. But that's not an independent act of free will or voluntary consent. And I think to make that finding is contrary to what's in the record. Because Trooper Johnson says, I was not asking for consent. I was telling him, I'm searching the car. So I also think because the district court... I mean, certainly if the court wanted that probed further, it would be for the district court to make that finding in the first instance, since it didn't engage with the legal analysis at all. And based on staggers, this court's usually resident to engage with an unaddressed legal issue for the first time. So that would be grounds for remand. And what about the need of him getting his license and his insurance documents? How did that all play in this arena in your opinion? I think we look to Lane v. California for guidance. Lane v. California, when there's only probable cause for a minor misdemeanor and failure to change lanes is a non-jailable offense in Texas, then really the presumption is get a warrant. So if Trooper Johnson had wanted to pursue a minor traffic violation, he could have gotten a warrant based on that probable cause. Taking the facts as they are on this record, he talks to Mr. Davalos from the street. He certainly can do that. And we have Mr. Davalos coming to the street. At that point, Trooper Johnson still needs some valid constitutionally permissible reason to enter the property. It doesn't prevent him from issuing a ticket. Davalos was a little confused and scared from Trooper Johnson pulling up with his lights on, but he did have his license in his pocket, and certainly Trooper Johnson could have run his plates to confirm registration. Or let's play out the hypothetical. Let's say that the person pulled over says, yeah, my registration's in my car, but you don't have permission to come up to my car with me. The officer could issue a ticket for failure to provide documents. There's recourse for law enforcement to enforce rules without having to intrude in a constitutionally protected area. There aren't any more questions. I'll reserve my time for rebuttal. Time for rebuttal. Thank you, Ms. Davidson. Mr. Devlin? Good morning, and may it please the Court. This Court should affirm the district court's denial of the motion to suppress evidences from the vehicle because, first, the vehicle was not in the curtilage, and the trooper did not intrude into the curtilage of the home. Secondly, the trooper was lawfully in a place where he could gather probable cause and did gather probable cause. And third, the search of the vehicle was reasonable and proper under the Fourth Amendment. The trooper didn't actually see the lane violation. Is that right? Somebody else saw it, and they radioed him, and then he started following on to the home. Does that matter? Well, I think that that is a part of the record that was perhaps a little confusing. He did initially say that he did not, and then later in the record he did say he observed traffic violations. But even if they had only been observed by other law enforcement officers, that would certainly be a legitimate basis for him to act. He's allowed to act on the basis of other law enforcement information. I do hope to cover three issues here. First, of course, is the curtilage issue, which is the primary issue. The vehicle search was not within the curtilage. The facts found by the district court in applying the factors under U.S. v. Dunn all favor a finding that the vehicle was not in the curtilage. Those factual findings are not substantially in dispute. Those factual findings are, of course, reviewed for clear error, and they lead to the conclusion that the area in question was not within the curtilage. We disagree with the defendant's position. Your case law is a little bit uncertain on what the standard of review is for finding curtilage, is it not? Well, I think that the standard of review for factual findings is, of course, clear error, but for legal findings it would be de novo. And I think the factors here, the factors under Dunn do not constitute a test per se, but at the same time they do outline facts that the Supreme Court has found important in determining whether or not the vehicle is in the curtilage. But ultimately it's whether or not that area was so intimately tied to the home that it is entitled to Fourth Amendment protections. The second issue I hope to cover very briefly. Before you leave curtilage, so what are the facts here that we can determine from existing Supreme Court case law? Tell us that it's not curtilage. Well, first, going through the Dunn factors I think is probably the first place to start. The district court found, and I think the facts do adequately show, that the area in question here where the vehicle was parked was not approximate to the house. It was pretty far from the house. It was right on the edge of a public sidewalk that was traversing the property, and it was very close to the street. And there's at least two photographs in our brief that shows that from different angles, but the vehicle was very close to the street and about as far from the house as it could be. Secondly, the second factor is the uses to which that area is put. And there's really no use of that area by the resident that would indicate that it was intimately tied to or associated with the home. Judge Smith, as you asked earlier, this area was not enclosed by any fence or any other enclosure. It was open to the public. It was accessible to the public. And frankly, a driveway is certainly a normal place for people like Amazon delivery drivers or mailmen or visitors or even people who mistakenly go to the house to go and walk up to get to the house at some point, just like the sidewalk is that leads to the front door. And finally, there were really no steps taken by the resident or the homeowner to ensure that there was any privacy or that the area in question could not be publicly observed. So I think those four factors play in here. So first, the district court found that it was not close to the house. It was very far from the house. And the district court contrasted that with the location of the motorcycle in the Collins case, which was up close to the house. Secondly, again, unlike the Collins case where that motorcycle was within an enclosure at the top of the driveway, and by the top of the driveway, that part closest to the house, this vehicle was not behind any enclosure and certainly was observable and accessible by the public. And then finally, there were no steps taken to make this part of the property unobservable by the public or inaccessible in any particular way. It was open. It was, again, close to a public sidewalk where presumably members of the public, anybody who wanted to, could walk up and down that property and even walk off the sidewalk a little bit if they wanted to in traversing that and neighboring properties. So I think all of those facts together, while, again, just because all four factors exist here doesn't necessarily lead to the final conclusion that it's a curtilage. Certainly four factors in favor of finding that it is not within the curtilage would certainly play a role in determining that this area was not associated with the home and is not entitled to the Fourth Amendment protections for the home. The next area I want to get into just very briefly, outline, is the officer safety concerns, and we've talked a lot about or has been talked a lot about exigent circumstances. This was a traffic stop. Defendant chose where he stopped in this case in his driveway, but nevertheless there was a traffic stop based upon probable cause, and so the officer here was certainly entitled to follow through on that. The first thing he did was he called out the defendant. He points out that it does matter whether it was a minor offense. If we had a different factual situation here, say where the defendant ran into the house, let's say, I would tend to agree that that would probably not be a situation that would allow for the officer to follow him into the house under the circumstances. However, here the officer called Mr. Davalos and any passengers out of the vehicle immediately, and so it was in the officer's mind that there could be passengers in the vehicle. And as has been pointed out by Judge Stewart, there were heavily tinted windows here that prevented the officer from seeing clearly into the vehicle to determine whether there were passengers. And so the record shows that everything the officer did at the beginning of the traffic stop was certainly to ensure his safety. He called Mr. Davalos to him at the street, to the officer at the street, for officer safety reasons, but he also called out passengers. No passengers responded at all, and it wasn't clear to the officer if there were passengers. And so under the circumstances, the exigency was certainly an urgency under the circumstances to determine if there was a passenger or passengers in the vehicle. And so everything that the officer did at that point was limited to dispelling that concern. He walked up to the vehicle, he tapped the side of the vehicle asking for any passengers, and then he proceeded up to a point at the vehicle. The driver's door was open and left open by Mr. Davalos. He went up to the driver's door and briefly glanced in to ascertain whether or not there were passengers, and he found that there were none. But while he was doing that, that's when he first detected the odor of marijuana, and he also noticed that the open driver's door appeared to have been tampered with. The side panel appeared to have not been put back in some way that looked like it was fitted in by the manufacturer. There was some evidence to the officer that it was tampered with. And so those concerns on his first approach were legitimate under the circumstances because even a traffic stop can turn violent and deadly very quickly without anybody anticipating it. The officer went back. It's not real clear because at one point the officer seemed to say that he consented to the search and then on the cross seems to backtrack and not say. So are you relying on consent as part of your argument for the search itself? We believe that there is sufficient facts in the record to support a finding of consent here, but I believe that before we even get to that point. Mr. Johnson, it looks like on the rec he's asked, he says he told me, quote, go ahead, but then later on the cross he seems to backtrack on that. I'm just wondering is the government relying on consent, whatever the transcript says, or not? I would say that the officers, even if the officer actually said no, he did not consent. He was certainly asked questions, though, that went to that finding, but I would say that the officer's view of the situation is not going to be binding on the district court. I think that Mr. Davalos's actions prior to that indicated a lot of the factors relating to consent. He was cooperative. He was asked a question by the trooper, is there anything that I'm going to find in the car that I should know about, and Mr. Davalos confidently said there was not, and I think he was given a second opportunity to clarify that and he repeated himself. So under the circumstances, while he may not have said, yes, I consent to the search, that's not necessary, he certainly acted in a way that indicated that he had no objection to the search, that he had every confidence that there would be nothing found during the search, and that the trooper would not be able to find anything that might either harm him or might constitute some sort of contraband or evidence of a crime. So I think that, yes, I think there's a lot of facts here that would support consent, but, again, this court may not have to reach that issue based on the other issues that might have to be arrived at before then. In terms of the second approach by the officer, that was based on the fact that Mr. Davalos was asked legitimately for his license and insurance, and instead of having it on his person, he told the trooper, my insurance at least is in the car, may I go get it. Well, certainly at that point, now the scenario has changed a little bit. I don't think the officer was necessarily concerned about anybody else being in the car, but he was certainly concerned about the possibility of a weapon being able to be accessed through the console and the glove box, even testified that based on his experience and his training, that's in the state of Texas at least is what he said on the record, a lot of folks carry firearms in their vehicle and they often carry it in the glove box, but they certainly might carry it in a place that's easily accessible. And so at that point the officer's safety concerns changed a little bit from what they were the first time around, and all that he was doing, all the officer was doing at this point was simply following Mr. Davalos to the vehicle. He wasn't doing anything on Mr. Davalos' behalf in the vehicle, he wasn't looking around for the insurance himself, he allowed Mr. Davalos to do that, but certainly to protect himself and to protect the trooper that was with him, he just simply followed Mr. Davalos to the vehicle while Mr. Davalos searched for his papers. And during that second approach to the vehicle, he reinforced what he had learned the first time, which was that marijuana was in there, the door looked like it had been tampered with and damaged, and so it simply reinforced what he had already found the first time. So because the officer was lawfully where he was at that moment and gathered facts that supported probable cause, he then established probable cause to search the vehicle for, in this case, for contraband, for drugs at least, and under existing law, and this is my third point, the search of the vehicle was based on probable cause and lawful, and he's allowed to search anywhere within the vehicle that may harbor whatever it is he's looking for. So in this particular case, the scent of marijuana is what drew him to the vehicle. The marijuana could certainly be hidden really in any place within the vehicle, and since he knew that the door appeared to be tampered with, he looked in there, and that's where he found the firearm as well as some marijuana. And obviously before that, Mr. Davalos had admitted that he had some marijuana on him and had recently smoked it, which was corroborated by the fact that the officer saw some ashes within the vehicle as well. So based on all of that information, based on those facts, he certainly developed probable cause to believe that the car contained evidence of a crime and contained contraband. Yeah, and that's a greater crime than not clicking which way you're going to turn. Correct. Move. Yes. I'm not suggesting which way we're going to decide, but where are you in this case if we decide that this was not curtilage? I think that the officer safety concerns do not depend on whether or not the vehicle was within the curtilage. I think that the fact that if the vehicle was not in the curtilage, then there's really no basis to reverse the district court here. But if the vehicle were in the curtilage arguing that, the officer still was entitled to approach the vehicle the first time and then again the second time based on officer safety concerns, again because of the fact that there could be other passengers in the vehicle as well. And he's essentially allowed to do a brief protective sweep, kind of a Terry stop, if you will, of the vehicle at that point to ensure his own safety because there was a, again, the heavily tinted windows provided that, and I've talked about the reasons why the officer approached the vehicle. So I don't think that the officer safety concerns are dependent on whether or not it's within the curtilage. I think either way, arguably it was in the curtilage, but it would still be justifiable. And again, given the fact that the officer developed probable cause at that point based on his lawful presence around the vehicle and his detection of drugs, at that point he developed probable cause and was able to search the vehicle. So going back now a little bit more to discuss the curtilage issue, again applying the Dunn factors, we believe that those would be appropriate to support a finding that the vehicle was not in the curtilage, was not in an area associated with the home. Although opposing counsel argues that Collins and Ardenas both may have somehow abrogated Dunn. That's not the case at all. I think, frankly, in those two cases those were easy decisions for the Supreme Court. A front porch is attached to the house. That was an easy decision. They didn't need to go through the Dunn factors. In the Collins case, the motorcycle was in an enclosed area. They didn't need to go through the Dunn factors. So the fact that they did not cite Dunn or go through the Dunn factors doesn't mean that there's anything about Dunn that no longer applies. Certainly those factors are clearly applicable to determining whether or not a location is within the curtilage. And so I think the Dunn factors remain viable. And, of course, the case of United States v. Bean that this court decided, that was pretty much on point here. The facts of that case were very similar to the facts of this case. The fact that the car parked at the lower end of the driveway, the fact that the officer partially blocked access to the driveway. And in that case, really the main difference is a difference favorable here in Bean. The district court found that that location was a little bit more proximate to the house than it did here. So even with the finding of that factor, say three to one under Dunn, three factors to one factor, the court still found that the vehicle was not within the curtilage and that, therefore, walking a drug-sniffing dog around the vehicle was appropriate. So in the end, we ask that this court affirm the district court's finding. Thank you. And subject to your questions, that concludes my presentation. Thank you, Mr. Shadlow. Thank you. Ms. Davidson for rebuttal. The chronology of this case is essential to understanding what question to ask when and what authority, if any, Trooper Johnson had. First, I want to clear up that while Trooper Johnson alludes to other traffic violations, he articulates only one, which is failure to change lanes. That's the point at which he pulls up behind Mr. Davalos. So at the point at which he exercises authority to beckon Mr. Davalos to the street, there's only evidence of a failure to change lanes. That's all he has at this point. There's no probable cause or even reasonable suspicion that there's contraband in the car or that Mr. Davalos engaged in some sort of criminal activity, which is significantly distinguishable from Bean. Mr. Bean, there was probable cause that he had committed aggravated assault with a deadly weapon. They were in pursuit of him, and there was probable cause that he had a weapon in the car. Those serious types of facts, as the police pursued Mr. Bean, do not exist in this case. This is a traffic violation. At the point at which he initiated his lights, there was no appropriate evidence for him to transgress the property, which we contend is curtilage. Very important, just a misrepresentation of our argument, I'm not arguing that Collins and Hardines abrogate Dunn. Dunn's still good law. But as the Supreme Court repeatedly notes, the Dunn factors are an analytical tool to be used only if they're relevant to the central question. And I think that's why the Supreme Court didn't even cite Dunn in Hardines and Collins, because it wasn't relevant to answer the central question of curtilage, because those areas were closely proximate to the home. In Dunn, it makes sense why they needed some analytical tools, because it was a large private parcel. The entire 200-acre farm was enclosed by a fence, and then it was subdivided within that property. They also had evidence before they trespassed that the barn they wanted to search was being used for methamphetamine manufacture. And so Dunn makes sense in very large parcels where there's subdivisions to see where the area being transgressed is in approximation to the home. Following up on the question that Smith asked, counsel opposite, if we were to say, does your argument wholly depend on us finding that there was curtilage here that was violated? Said differently, as he asked, if we were to say, well, maybe not curtilage, does that get you home? What about the rest of what's here? I mean, how does that extricate you? Even if we were to say, assuming arguendo, no curtilage or whatever, how do you get past these other issues? And then the second part of my question, is there any factual error that you rely on, a factual error by the trial judge, or otherwise are the facts undisputed and we just make the legal call? Okay. First question, I do believe it's essential to the argument that a residential driveway immediately adjacent to and attached to the home is curtilage. If it's not curtilage, then we don't have the type of unconstitutional trespass. So I do think that is step one. And I think we would all do well with clarification so that people can feel free in their homes and the areas surrounding them that they do have existing Fourth Amendment rights. So I do think the curtilage question is essential. Second, the difference between fact and law, the true clear error that the district court makes is when it finds that a plastic bag that was observed being put in the trunk was probable cause for the search. That is clearly wrong based on the record. Trooper Johnson said, well, I know he put a plastic bag in the trunk, but that was not probable cause for the search. So that's a true, I think, factual error that the district court makes. In terms of what the car looks like, we're not contending that the car was inside the house. The photographs speak for itself. So that is not a factual finding challenge. But the legal conclusion of that fact is, I think, something that the court can rule on on de novo. Thank you. Thank you, Ms. Davidson. Your case is under submission.